```
 1
 2    UNITED STATES BANKRUPTCY COURT
 3    SOUTHERN DISTRICT OF NEW YORK
 4
 5
      ------------------------------x
 6
      IN THE MATTER OF:
 7
      SLOANE A. WORTH,                    CASE NO. 17-23155-cgm
 8                                        CHAPTER 13
                  Debtor.
 9    ------------------------------x
10
11                United States Bankruptcy Court
12                300 Quarropas Street
13                White Plains, NY  10601
14
15                Wednesday, February 22, 2023
16                10:05 a.m.
17
18
19    B E F O R E:
20    HON. CECELIA G. MORRIS
21    U.S. BANKRUPTCY JUDGE
22
23
24    ECRO:   UNKNOWN
25
```

SLOAN A. WORTH, DEBTOR - 17-23155-cgm:

HEARING on MOTION TO AMEND BY TRUSTEE, OR IN THE ALTERNATIVE DISMISS CASE FOR CAUSE UNDER 1307(c) WITH NOTICE OF MOTION, APPLICATION, AND CERTIFICATE OF SERVICE filed by Krista M. Preuss on behalf of Krista M. Preuss. (Doc #62)

Transcribed by:  Acorn Transcripts, LLC

1  A P P E A R A N C E S :
2
3  BRONSON LAW OFFICES, P.C.
4       Attorneys for Sloane A. Worth, Debtor
5       480 Mamaroneck Avenue
6       Harrison, NY 10528
7  BY:  H. BRUCE BRONSON, JR., ESQ.
8
9  OFFICE OF THE CHAPTER 13 TRUSTEE KRISTA M. PREUSS
10      Attorney for the Chapter 13 Trustee
11      399 Knollwood Road
12      Suite 102
13      White Plains, NY 10603
14 BY:  THOMAS C. FROST, ESQ.
15
16
17
18
19
20
21
22
23
24
25

P R O C E E D I N G S

(Call to order)

THE COURT: 17-23155, Sloane Worth.

MR. FROST: Tom Frost for the Chapter 13 Trustee.

MR. BRONSON: Good morning, Your Honor. Bruce Bronson on behalf of Ms. Worth.

MR. FROST: Judge, this is the Trustee's motion to modify the plan under 1329, or in the alternative to dismiss the case. If I may just review sort of where we stand, Judge, and how we got here.

Mr. Bronson and myself, and also Ms. Preuss, have had extensive negotiations and discussions in trying to settle the matter. Unfortunately, we -- the parties are unable to resolve the matter. And so we would be looking for the Court to make a decision on the motion and the related opposition today.

If the Court would let me present sort of the salient facts as I see them, that I would like to bring to the Court's attention, I would appreciate that.

THE COURT: Very good. Please do so.

MR. FROST: Judge, in this case, this is a situation where we did receive the tax returns timely from the Debtor. And the tax returns did show a very large increase in income. And as this Court knows, when we get tax returns, we don't always see what the history is behind the

1  increase and the adjusted gross income. So we filed our
2  motion here.
3          And in the motion, it does indicate the Debtor
4  here, Sloane Worth, in their budget, Sloane doesn't earn any
5  gross monthly income. The non-filing spouse is providing all
6  of the income in this Chapter 13 case, and that is how the
7  plan was confirmed. Solely based upon the income by the non-
8  filing spouse.
9          The plan payment in this case, Judge, is $300 a
10 month, and the Debtor is earning approximately $300,000 a
11 year. The Debtor, if the Court allows this to go forward and
12 discharge, the Debtor will be discharging over $369,000 of
13 debt. This was primarily a second mortgage that was voided,
14 which is an unsecured claim now, which would be the subject
15 of that discharged debt.
16         So the non-filing spouse has received great
17 advantages by the Debtor filing this bankruptcy.
18         Now, as Mr. Bronson will indicate in his papers,
19 the non-filing spouse is the recipient of an inheritance.
20 The inheritance in this case operated to provide additional
21 monies to the non-filing spouse.
22         The Trustee's main position here, Judge, is that
23 the Debtor cannot have it both ways. If the case is filed
24 and confirmed based upon the non-filing spouse's income
25 solely, when that non-filing spouse has a windfall in income

pursuant to an inheritance, that money should come in for the benefit of the creditors, especially so because that non-filing spouse is obtaining the benefit of his Debtor spouse having filed this case at the outset.

It's not clear to me why Ms. Worth did not file the case along with her husband. I don't know how relevant that is, but it probably should have been a joint filing, but it wasn't.

In this case, Judge, the tax returns -- and let me address the second prong of the motion, where I talk about the charitable contributions. At the time we received the tax returns, the Trustee noticed that there was a large amount listed on the tax returns in the cash charitable contribution box of the tax return. Upon reading Mr. Bronson's papers and subsequent conversations, it turns out that it wasn't a cash gift, as reported on the tax returns, but it was the donation of various items of personal property, from what I understand, as a result of the inheritance, whether it was furniture or other items from the non-filing spouse's inheritance.

So I want to correct the record, because the Trustee, based on the information we had at the time, that was provided for by the Debtor, the Trustee saw an incongruity with a $50 a month amount being designated to charity, and then an annual $52,000 lump sum charitable

donation. So that issue, I believe has been cleared up. So that portion of the Trustee's motion, I wanted to just clarify because I know that Mr. Bronson and I have had extensive conversations about that issue.

Again, the Trustee's position is that it is not good faith that this Debtor be allowed to continue to have the benefit and basically have it both ways, where the Debtor gets to use all of the non-filing spouse's income when it's convenient for her, but then when there's a substantial unanticipated increase, that that money is all of a sudden off limits. It just -- it doesn't wreak of good faith, Judge. It is -- I hesitate to say gaming the system, but it doesn't seem fair to the creditors in this case, Judge.

THE COURT: Mr. --

MR. FROST: And the rest of it is in our papers, Judge. I will certainly answer any questions that may come up after Mr. Bronson has an opportunity to give his side of the story.

THE COURT: Mr. Bronson?

MR. BRONSON: Yes, Your Honor.

This is -- case is somewhat perplexing to me. Mr. Frost did an excellent job of really stating how we got here. And at first, I thought that the -- you know, the complaint was kind of sharp elbowed, but Mr. Frost has really presented it perfectly at the moment.

1 What I'd like to point out is the gain that's on
2 the Worth's tax return, 162,000, is capital gain from the
3 sale by -- in the estate. If that property was never sold,
4 Mr. Worth would've had that asset, and it would've been his
5 asset, not his wife's. It would not have been any issue in
6 this bankruptcy whatsoever. But because there were five, you
7 know, people involved as inheriting property, they sold a
8 piece of property, and it ended up with capital gains.

9 This is not increased income for the wife. And
10 this is the dollar amount that really the Trustee is pointing
11 at and says is an increase. We -- and I appreciate Mr. Frost
12 on the donation side, because we did get an affidavit on that
13 and clarified that.

14 I think Mr. Worth's affidavit, which is attached to
15 our pleading, and the pleading itself sets forth a very
16 cogent position that we have.

17 I do understand the concept of if income goes up
18 dramatically that there should be an increase. We did try to
19 negotiate in good faith, but we were pretty far apart on the
20 numbers. This morning, I suggested, probably too late, that
21 maybe we mediate that number. Ms. Preuss didn't say no, but
22 she said I don't know if we'd have a benefit from that
23 because it's just a number at this point.

24 So, Your Honor, you know, I -- for all the reasons
25 set forth in my response, I don't think at the 12th hour here

1  in the very end of this case, I believe the Trustee's motion
2  was filed in June, and the plan would've been over in July --
3  July 24th. I just think there's case law that says that a
4  Chapter 13 plan shouldn't be upended at the end, unless there
5  is bad faith. And there hasn't been anything done here by
6  the Worths that I think should be looked at as bad faith.
7  Thank you, Your Honor.
8  THE COURT: Mr. Frost?
9  MR. FROST: Just one final point, Judge. I think
10 that the very unique circumstance here is in the way that
11 this Chapter 13 case has been formulated from its foundation.
12 That it's solely reliant on the non-filing spouse's income.
13 And again, I think that that fact is what sets this apart
14 from, perhaps, other facts. The fact that the non-filing
15 spouse did liquidate that property, it did have an impact on
16 the household disposable income, Judge. And that's clearly
17 reflected in the tax returns.
18 I think that there should be a benefit here to the
19 creditors. I think it would be unfair for Mr. -- for Ms.
20 Worth and her spouse to get a discharge when they've had the
21 benefit of this case, given the fact that there is all of
22 this extra money that should be given to the benefit of the
23 creditors, again, because it was fully premised on the income
24 of the non-filing spouse.
25 In this case, I know the Debtor had intended on

possibly going back to work, but in reality, this case, we don't have a Debtor with regular income. It's all the spouse's, the non-filing spouse's income. So I think the specific facts of this case, Judge, we would respectfully point you to those as a way to distinguish them from perhaps some other factual scenarios. And we don't believe that it would be appropriate to let the Debtor have their cake and eat it too, as the facts present themselves.

THE COURT: Mr. Bronson, anything else?

MR. BRONSON: No, Your Honor. I do agree that this is somewhat of a unique situation, and if this wasn't from an inheritance and was just wage income increase, I would have to agree.

THE COURT: No, I can't agree with you, Mr. Bronson. I think it's -- and I think the word "gaming the system" really comes to mind. Section 1325(b)(4)(A)(ii) requires consideration of a married debtor's spouse's income to determine the applicable commitment period, regardless of whether the spouse is joining in the Chapter 13 filing.

The statute refers to the current monthly income of the debtor and the debtor's spouse combined. That being said, when this was confirmed, it was on that she was going to possibly be employed, and Mr. Frost is correct. She should not even have been in 13 if that could not be done.

That being said, and Section 1307 allows the Court

1  to dismiss the Chapter 13 case for cause. I find that there
2  is cause to dismiss this Chapter 13 case. I will do one
3  thing, though. I will adjourn this to 3/22, Mr. Bronson if
4  they wish to make this a 100 percent plan. So I will hold
5  off. Mr. -- I will tell you how I'm going to rule, but if
6  you make it 100 percent plan, and you file that amended plan,
7  and you check in with me on 3/22, I would be willing to go
8  along with that.
9           MR. BRONSON: Yes, Your Honor.
10          THE COURT: But I need to have an answer before
11 3/22. I need to have an answer by 3/1 what they're going to
12 do.
13          MR. BRONSON: Your Honor, I would ask the following
14 week because I'm going to be away for a week and --
15          THE COURT: Well, I'm giving you a lot of time.
16          MR. BRONSON: Yes. Yes, you are.
17          THE COURT: They can decide this week what they
18 want to do.
19          MR. BRONSON: Okay, Your Honor.
20          THE COURT: I mean, this -- I find this one
21 unconscionable. I really do, Mr. Bronson.
22          MR. BRONSON: Your Honor,
23          THE COURT: Your Honor, that's -- you know, that's
24 the point. There was nothing done here. And I --
25          MR. BRONSON: I hear you. I've heard you.

1    THE COURT: Yeah. Okay.

2    MR. BRONSON: Thank you, Your Honor.

3    (Whereupon proceeding was adjourned.)

8                           CERTIFICATION

10   I, Nancy B. Gardelli of Acorn Transcripts, LLC, hereby

11   certify that the foregoing transcript is correct, to the best

12   of my ability, from the official electronic sound recording

13   of the proceedings in the above-entitled matter.

17   /s/ *Nancy B. Gardelli*          Dated: March 30, 2023

18   Nancy B. Gardelli

19   Acorn Transcripts, LLC

20   3572 Acorn Street

21   North Port, FL  34286